Case 1:15-cv-00202 Document 43 Filed in TXSD on 08/05/16 Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
August 05, 2016
David J. Bradley, Clerk

hUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FRANCISCO LOPEZ-IBANEZ, | § | |
| Movant, | § | |
| | § | |
| v. | § | Case No. 1:15-cv-202 |
| | § | (Criminal No. 1:14-cr-158-1) |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

# MAGISTRATE JUDGE'S
# REPORT AND RECOMMENDATION

The Court is in receipt of Francisco Lopez-Ibanez's pro se "Motion Under 28 U.S.C. § 2255" (hereinafter, Lopez-Ibanez's "Motion" or "§ 2255 Motion"). Dkt. No. 1. The Court recommends that Lopez-Ibanez's sentence be vacated and that he be resentenced. All other requests for relief should be denied without prejudice at this time.

## I. Jurisdiction

Lopez-Ibanez is challenging the judgment of conviction and sentence entered by this District Court on November 18, 2014. *See United States of America v. Lopez-Ibanez*, No. 1:14-cr-158-1, Dkt. No. 35 at 1.[1] This Court has jurisdiction pursuant to 28 U.S.C. § 2255.

---

[1] Hereinafter, Lopez-Ibanez's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their docket entry numbers.

## II. Background

On March 28, 2014, Lopez-Ibanez pleaded guilty to being an alien unlawfully found in the United States after deportation, having previously been convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b). CR Dkt. No. 35 at 1. On November 3, 2014, Senior United States District Judge Hilda Tagle sentenced Lopez-Ibanez to 87 months of imprisonment. *Id.* at 2-3. The Court did not impose a term of supervised release or a fine. *Id.* Judgment was entered on November 18, 2014. *Id.* at 1. Lopez-Ibanez did not appeal. Dkt. No. 1 at 2.

On November 10, 2015, Lopez-Ibanez filed his instant § 2255 Motion. Dkt. No. 1 at 13.[2] In his § 2255 Motion, Lopez-Ibanez alleges that his trial counsel, Ricardo Barrera, deprived him of effective assistance of counsel because, after agreeing to do so, Barrera failed to file a notice of appeal. *Id.* at 7. Lopez-Ibanez also alleges that Barrera provided ineffective assistance of counsel when he failed to research into his immigration status and argue that the Court lacked subject matter jurisdiction. *Id.* at 4. Lopez-Ibanez further alleges that the Court improperly sentenced him, but that because of Barrera's error he could not appeal. *See id.* at 5.

On November 17, 2015, the Court ordered the Government to respond to Lopez-Ibanez's § 2255 Motion. Dkt. No. 3. In that order, the Court gave the

---

[2] Lopez-Ibanez indicates that he placed his § 2255 Motion in the prison mailing system on November 10, 2015. Dkt. No. 1 at 13. Accordingly, the Court will consider his Motion filed on that date. *See generally Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (noting that, for statute of limitations purposes, a pro se prisoner's application is filed on the day it is placed in the prison mailing system); *United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992) (applying the mailbox rule to pro se prisoner proceedings under 28 U.S.C. § 2255).

Government two options: (1) file a response on or about January 19, 2016, to Lopez-Ibanez's claim that his counsel failed to pursue a requested appeal; or (2) file a motion requesting a court-ordered affidavit from Lopez-Ibanez's former counsel by December 18, 2015. *Id.* On December 22, 2015, the Government filed a motion seeking the Court to order Barrera to file an affidavit responding to Lopez-Ibanez's claim that Barrera failed to file a requested appeal. Dkt. No. 9. The Government further requested that the Court grant an extension of time to respond to Lopez-Ibanez's § 2255 Motion. *Id.* On December 30, 2015, the Court granted the Government's request for Barrera to file an affidavit responding to Lopez-Ibanez's claim. Dkt. No. 10. However, the Court denied as moot the Government's request for an extension of time to respond. *Id.* Barrera filed an affidavit on January 14, 2015. Dkt. Nos. 14 and 15.

The Court set an evidentiary hearing for April 12, 2016, at 9:00 a.m., and appointed counsel to represent Lopez-Ibanez. Dkt. No. 23. On February 11, 2016, the Court notified Lopez-Ibanez of a change in appointed counsel. Dkt. No. 29. On April 04, 2016, Lopez-Ibanez's new counsel sought a continuance, and the Court reset the evidentiary hearing to May 16, 2016. Dkt. No. 34.

At the hearing, Lopez-Ibanez and Barrera both testified regarding what took place during the course of representation. *See* Dkt. No. 40. At the conclusion of the hearing, Lopez-Ibanez's counsel requested the opportunity to file a supplemental brief. *Id.* at 77-78. The Court orally granted the request and directed Lopez-Ibanez's counsel to file his supplemental brief on or before June 08, 2016. *Id.* The

Court also ordered that the Government file any response on or before June 15, 2016. *Id.* Lopez-Ibanez's counsel filed a supplemental brief June 08, 2016. Dkt. No. 42. The Government did not file a response.

### III. Legal Standards

**A. 28 U.S.C. § 2255**

Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If an error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

**B. Ineffective Assistance of Counsel**

The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 1405 (2012) (citing *Montejo v. Louisiana,* 556 U.S. 778, 786 (2009)). Critical stages include not only the trial,

but also pretrial proceedings — including the plea-bargaining process. *Laffler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Laffler*, 132 S.Ct. 1376, 1385-1386.

In *Strickland v. Washington*, the Supreme Court announced that in order to succeed on an ineffective assistance of counsel claim, a defendant must show both: (1) that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense," and shows "errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Courts need not even address both inquiries if the defendant does not sufficiently support one prong, nor must the court address the test in the same order. *Id.* at 697. Under this standard, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. As it is easy to second-guess counsel's performance after a conviction or adverse sentence, a fair assessment of performance requires reconstructing the circumstances of counsel's conduct from their perspective at the time rather than look towards the "distorting effects of hindsight." *Id.* at 689. As such, counsel is strongly presumed to have performed adequately and made decisions using reasonable professional judgment. *Id.* at 690.

Additionally, the sufficiency of counsel's representation may be determined, and indeed substantially influenced, by the defendant's own statements and actions. *Id.* at 691. As stated by the Supreme Court, an attorney's actions are usually based on information supplied by the defendant, and, for example, investigative decisions or potential lines of defense are followed based upon what the client has said. *Id.* Counsel's conversations with the defendant may then be critical to properly assessing his actions in the course of litigation. *Id.*

## IV. Discussion

As stated above, Lopez-Ibanez's Motion asserts three claims. Dkt. No. 1 at 4-5, 8. First, Lopez-Ibanez alleges that the Court lacked subject matter jurisdiction to accept a guilty plea or impose a sentence because he had not been previously deported by an immigration judge. *Id.* at 4. Lopez-Ibanez alleges that his counsel was ineffective by failing to raise these arguments. *Id.* Second, Lopez-Ibanez alleges that the offense used to enhance his sentence under the Sentencing Guidelines did not constitute a "crime of violence," and therefore violated his due process rights. *Id.* at 5. Finally, Lopez-Ibanez alleges that Barrera was ineffective because Barrera agreed to file a notice of appeal on his behalf but failed to do so. *Id.* at 8. The Court addresses Lopez-Ibanez's third claim first.

A defendant claiming that his counsel failed to file a notice of appeal may establish ineffective assistance of counsel by showing that his counsel provided ineffective assistance, and that, but for his counsel's ineffective assistance, he would

have timely appealed. *Roe v. Flores–Ortega*, 528 U.S. 470, 476-477 (2000). Where counsel disregards the defendant's wish to appeal, counsel's performance is considered ineffective, regardless of whether the defendant can show that he possessed a meritorious basis for appeal. *Id.* at 477. If a defendant demonstrates by a preponderance of the evidence that he directed his counsel to file an appeal, prejudice is presumed and the defendant is entitled to an out-of-time appeal. *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). The defendant need only show "that there is a reasonable probability that, but for counsel's failure, he would have timely appealed." *Id.* at 265. Further, this applies even when the defendant enters into a plea agreement waiving his right to collateral review or direct appeal. *Id.* at 266; *United States v. Cong Van Pham*, 722 F.3d 320, 326 (5th Cir. 2013).

Where a defendant has not specifically directed his counsel to file an appeal, the Court has an obligation to determine whether his counsel failed to consult with him about an appeal. *Flores-Ortega*, 528 U.S. at 478. If counsel had failed to consult with him regarding an appeal, the Court must also determine whether this failure constitutes deficient performance. *Id.* The Fifth Circuit recently addressed how a court analyzes ineffectiveness of counsel claims "when the defendant has not clearly conveyed his wishes [regarding an appeal] one way or the other [:]"

> Under *Flores–Ortega*, the first *Strickland* prong begins with the question whether counsel "consulted" with the defendant regarding an appeal. "Consulting" is a term of art that means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a

professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."

If, however, counsel failed to consult with the defendant about an appeal, then the question is whether that failure was unreasonable because it breached the duty to consult. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal) or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." The existence of a duty to consult is assessed in light of "all the information counsel knew or should have known." Whether the conviction followed a trial or a guilty plea is "highly relevant," although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained. The Supreme Court predicted that district courts would find a duty to consult "in the vast majority of cases."

*Cong Van Pham*, 722 F.3d at 323 (footnotes, citations and formatting omitted).

**A. The Affidavit and Hearing Testimony of Lopez-Ibanez and Barrera.** In his § 2255 Motion and Brief in Support, Lopez-Ibanez makes the following assertions:

1.     Lopez-Ibanez instructed Barrera to file a notice of appeal on his behalf; Barrera agreed. Dkt. No. 1 at 7. However, Barrera failed to file a notice of appeal on Lopez-Ibanez's behalf and never visited Lopez-Ibanez to discuss the appellate issues. *Id*.

In his Affidavit, Barrera responded to Lopez-Ibanez's claims as follows:

1.     Barrera was assigned to represent Lopez-Ibanez at Lopez-Ibanez's sentencing hearing after he terminated his previous attorney. Dkt. No. 15.

2.  Lopez-Ibanez was advised of his right to appeal prior to sentencing and immediately after sentencing at the courthouse. *Id.* Lopez-Ibanez never notified Barrera of his intent to appeal, despite knowing he had the right to do so. *Id.*

3.  Barrera reminded Lopez-Ibanez of his right to appeal immediately after sentencing because Barrera was not satisfied with the outcome. *Id.* Barrera would have filed a notice of appeal if Lopez-Ibanez had so requested. *Id.*

4.  Barrera could not find any requests from Lopez-Ibanez for an appeal at the public defender's office, nor are there any requests, records or correspondence requesting an appeal in Barrera's personal file. *Id.*

5.  Barrera could not find any attempts by Lopez-Ibanez or any family members to contact Barrera since his last conversation with Lopez-Ibanez. *Id.*

At the evidentiary hearing, Barrera testified as follows:

1.  Barrera was appointed by the Court after Lopez-Ibanez requested another attorney during his first sentencing hearing. Dkt. No. 40 at 12. Barrera was present at Lopez-Ibanez's final sentencing hearing. *Id.* at 10. Barrera went over the Pre-sentence Investigation Report (PSI) and Lopez-Ibanez's right to appeal the judge's sentence with Lopez-Ibanez prior to that hearing. *Id.* at 33-34.

2.  Barrera was surprised and disappointed by the long sentence. *Id.* at 21, 27. This prompted Barrera to go talk to Lopez-Ibanez immediately after sentencing. *Id.* at 44-45. Barrera did not have any notes from the interview with Lopez-Ibanez occurring immediately after sentencing. *Id.* at 45. Barrera was not aware of the Assistant Federal Public Defenders' custom of having a defendant fill

out a form, during which the attorney explains to defendants their right to appeal, and that defendants sign next to the box indicating whether or not they want to appeal. *Id.*

3. Barrera spent at least five, but no more than twenty minutes speaking with Lopez-Ibanez after he was sentenced to 87 months of imprisonment. *Id.* at 27. Barrera testified that in response to him advising Lopez-Ibanez of his right to appeal, Lopez-Ibanez answered, "Nah, F--- it." *Id.* at 28. Barrera understood this to mean Lopez-Ibanez did not want to appeal. *Id.* at 29. Barrera also recalled Lopez-Ibanez saying the words "Está bien"[3] but did not recall the context in which Lopez-Ibanez said them. *Id.* at 41. Those are the only words Barrera remembers Lopez-Ibanez saying during the conversation. *Id.* Barrera does not recall Lopez-Ibanez ever actually saying that he did or did not want an appeal. *Id.* at 29, 40, 43.

4. Barrera recalls that the conversation possibly took place in both English and Spanish. *Id.* at 28-29.

5. Barrera visited Lopez-Ibanez the day prior to the sentencing hearing. *Id.* at 32-33. There, Barrera advised Lopez-Ibanez of his right to appeal if he was not content with the judge's sentence. *Id.* at 33.

6. Barrera has no record, letter, message or any form of evidence that Lopez-Ibanez called him after the sentencing hearing. *Id.* at 46.

In response to Barrera's allegations, Lopez-Ibanez testified at the evidentiary hearing as follows:

---

[3] During the evidentiary hearing the court interpreter translated the phrase "Está bien" to "That's fine." Dkt. No. 40 at 41-42, 68.

1. Lopez-Ibanez had been initially represented by "Mr. Cantu." Dkt. No. 40 at 57. Mr. Cantu explained to Lopez-Ibanez that he could plead guilty with a plea agreement or without one. *Id.* at 58. Lopez-Ibanez decided not to sign the plea agreement, and, based on his conversation with Mr. Cantu, understood that not signing the plea agreement meant he could appeal the sentence. *Id.*

2. Before the Court appointed Barrera as counsel, Lopez-Ibanez had been represented by Cesar Amador ("Amador"), who explained to him the PSI. *Id.* at 59. Amador told Lopez-Ibanez that he could receive a sentence of 70, 80, or 90 months of imprisonment and discussed with Lopez-Ibanez his rights to appeal if he was unhappy with his sentence. *Id.* at 60-61. Lopez-Ibanez testified he understood that Amador would appeal the sentence if the Judge did not reduce it. *Id.* at 61.

3. At the hearing held on August 5, 2014, Lopez-Ibanez asked the judge for a new attorney because he believed Amador would not want to help him. *Id.* at 62. Barrera was then appointed as Lopez-Ibanez's counsel. *Id.*

4. Barrera spoke to him about two to three times prior to his sentencing hearing. *Id.* Additionally, Lopez-Ibanez asserts Barrera discussed with him his appellate rights at some point during these visits. *Id.*

5. After sentencing, Lopez-Ibanez had a three to four-minute conversation with Barrera where Barrera told him that he had the right to appeal the judge's sentence. *Id.* at 65, 68. Lopez-Ibanez alleges that he told Barrera "it was okay to go ahead and file the appeal because it was a lot of time…" *Id.* at 69. Barrera did not respond to this request nor did he visit Lopez-Ibanez again after

this conversation. *Id*. at 69-70. As Barrera had not communicated with Lopez-Ibanez for some time following his sentencing hearing, Lopez-Ibanez called his office twice. *Id*. at 71. Lopez-Ibanez was unable to get a hold of Barrera, or anyone that could communicate a message to him. *Id*. at 71-72.

6. Lopez-Ibanez never responded to Barrera with profanity, he only told Barrera that it was okay to file the appeal. *Id*. at 76.

**B. Analysis**

The record is insufficient to allow the Court to determine, with certainty, what actually transpired between Barrera and Lopez-Ibanez in the holding cell immediately after Lopez-Ibanez was sentenced. It is clear that, prior to sentencing, some consultation occurred between Barrera and Lopez-Ibanez regarding Lopez-Ibanez's appellate rights. Dkt. No. 40 at 20, 62. Although Barrera and Lopez-Ibanez disagree on the length of time, both testified that they spoke after Lopez-Ibanez's sentence was pronounced. *Id*. at 26-27, 68. However, while Lopez-Ibanez contends that he told Barrera to go ahead and file the appeal, Barrera alleges Lopez-Ibanez did not care about the sentence. *See id*. at 49. Further, while Lopez-Ibanez claims to have called Barrera's office approximately two times while waiting for Barrera to come back to speak with him about the appeal, Barrera claims there are no messages or letters left for him from Lopez-Ibanez. *Id*. at 46, 71. Barrera also alleges that from Lopez-Ibanez's response when Barrera asked if he wanted to appeal, he understood that Lopez-Ibanez did not want to appeal. *Id*. at 29.

The Court finds Lopez-Ibanez's testimony was more credible and consistent, whereas Barrera's testimony was undermined by his lack of recollection. Lopez-Ibanez testified that he did not sign a plea agreement to plead guilty, understanding that this meant he could appeal any sentence the judge imposed. Dkt. No. 40 at 58. Additionally, Lopez-Ibanez unequivocally testified that he expressed dissatisfaction at the sentencing range in the PSI to his previous attorney, Amador, and his desire to appeal if the judge sentenced him within that range. *Id.* at 60-61, 72-73. Lopez-Ibanez, dissatisfied and upset at the possibility of Amador being unable to help him get a reduction in his sentence, asked the judge to appoint him a new attorney. *Id.* at 72-73. This testimony indicates that Lopez-Ibanez would have wanted to appeal his judgment if it fell within the range recommended in the PSI. Not only does he allege to have expressed this sentiment to Amador, but also to Barrera. *Id.* at 69. Moreover, Barrera testified that he conferred with Amador about the conversations Amador had with Lopez-Ibanez regarding Lopez-Ibanez's appellate rights. *Id.* at 39.

Lopez-Ibanez also testified that when Barrera advised Lopez-Ibanez of his right to appeal, Lopez-Ibanez answered, "Está bien."[4] Dkt. No. 40 at 68-69. Lopez-Ibanez clarified that he told Barrera, "Okay, file the appeal." *Id.* at 69. Barrera agreed that during his conversation with Lopez-Ibanez after the sentencing hearing, Lopez-Ibanez spoke the words, "Está bien."[5] *Id.* at 41. However, Barrera could not recall if Lopez-Ibanez spoke those words in reference to whether or not he wanted to

---

[4] *See supra* n.3.
[5] *See supra* n.3.

appeal. *Id.* Barrera testified that the only thing he clearly remembers from his conversation with Lopez-Ibanez after the sentencing hearing was Lopez-Ibanez's response when advising him on his right to appeal, "Nah, F--- it." *Id.* at 28.

Barrera's testimony also indicates that when Lopez-Ibanez responded to Barrera's advice on his right to appeal, Lopez-Ibanez "possibly" responded in English, despite Lopez-Ibanez only speaking Spanish "the rest of the time, or other times." Dkt. No. 40 at 28. Barrera later states that the conversation could have taken place in both English and Spanish. *Id.* at 29. Finally, Barrera does not have any notes pertaining to what was discussed at the holding cell. *Id.* at 45. In sum, Barrera was not convincing in his recollection of the conversation in the holding cell with Lopez-Ibanez after the sentencing hearing.

Moreover, Lopez-Ibanez appears to have a better recollection of the events that occurred before and during his sentencing hearing. For example, Lopez-Ibanez recalls being visited by Mr. Cantu and a woman from probation by the name of Martha. Dkt. No. 40 at 59. Lopez-Ibanez recalls waiting two months in jail before being able to see his PSI. *Id.* at 59. Lopez-Ibanez was more precise as to the amount of time that Barrera spent with him after the sentencing hearing, stating that Barrera spoke with him for three to four minutes. *Id.* at 64. On the other hand, Barrera first said that he remembered talking with Lopez-Ibanez for more than five minutes, but less than twenty. *Id.* at 27. However, Barrera agreed that it was actually between five and ten minutes; yet, later Barrera corrected himself by claiming that he spoke to Lopez-Ibanez closer to ten minutes. *Id.* at 27, 32.

Lopez-Ibanez recalls calling Barrera's office about twice after his sentencing hearing in order to talk with Barrera about his appeal, but nobody answered. Dkt. No. 40 at 71. Barrera never contradicts this statement. Instead, Barrera claims that he had "no letter from him at all, no message from my secretary or answering service that he had called." *Id.* at 46. It is possible that Lopez-Ibanez did call Barrera, but that Barrera did not receive a message from Lopez-Ibanez because he was unable to speak to someone in his office.

For these reasons, the Court finds there is a reasonable probability that Lopez-Ibanez expressed his intent to appeal to Barrera, which is ineffectiveness per se. Further, the Court finds that Lopez-Ibanez would have timely appealed but for Barrera's ineffective assistance. Therefore, Lopez-Ibanez is entitled to an out-of-time appeal. *See United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

## V. Recommendations

For the reasons stated above, the Court recommends that Lopez-Ibanez's sentence be vacated and that he be resentenced. All other requests for relief should be denied without prejudice at this time.

## VI. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 5th day of August, 2016.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**